UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

NATALIA MARTIN and EDGARDO RAMOS,

        Plaintiffs,

 v.

INTEGON NATIONAL INSURANCE,

        Defendant.

Civil Action No.
3:22 - CV - 00736 (CSH)

FEBRUARY 22, 2024

## RULING ON PLAINTIFFS' MOTION TO COMPEL [Doc. 47]

**HAIGHT, Senior District Judge:**

### I. INTRODUCTION

In this action, Plaintiffs seek to satisfy a Connecticut Superior Court judgment of $5 million entered against Hugh Ireland in favor of Plaintiff Natalia Martin and her husband, Plaintiff Edgardo Ramos, for grievous personal injuries Martin sustained as the result of an auto accident in which Ireland was the driver.[1] Doc. 1-1 ("Complaint"), ¶¶ 8-36. Specifically, this action arises out of an incident that took place in Norwalk, Connecticut, on August 1, 2019. Doc. 1("Notice of Removal"), ¶ 2. On that date, Martin "sustained bodily injury allegedly caused by the negligent operation of a motor vehicle" by Hugh Ireland, while an insurance policy issued by Defendant Integon National Insurance ("Integon") was in effect. *Id.*

---

[1] *See Martin v. Ireland*, Case No. FST-CV21-6052691-S, Judicial District of Stamford/Norwalk at Stamford ("Judgment by Stipulation," entered 11/30/2021). The $5 million amount of the judgment was apportioned $4.5 million in favor of Martin and $500k in favor of Ramos.

1

In July 2021, Plaintiffs sued Hugh Ireland directly in Connecticut Superior Court. *See Martin v. Ireland*, Case No. FST-CV21-6052691-S, Judicial District of Stamford/Norwalk at Stamford ("Underlying Action."). Through a settlement agreement, and in exchange for a release from the Judgment, Hugh Ireland assigned to Plaintiffs all his rights to payment, if any, from Integon (or its affiliates) in connection with Plaintiffs' claims in the Underlying Action. *See Martin v. Ireland*, ("Judgment by Stipulation," entered 11/30/2021). In the present action, Plaintiffs seek to recover the unpaid Judgment from the Underlying Action in a direct action against Integon pursuant to Conn. Gen. Stat. § 38a-321.[2]

## II. BACKGROUND

Prior to August 2019, Integon had issued an insurance policy (herein "Integon Policy") to Hugh Ireland's paternal grandfather, William D. Ireland III, insuring him and members of his household against loss or damage on account of bodily injury caused by negligent operation of a motor vehicle. Doc. 1-1, ¶ 4. On August 1, 2019, at approximately 6:38 p.m., Plaintiff Natalia Martin was "walking along and at the intersection of Heritage Hill Road and Toilsome Avenue, Norwalk, Connecticut." *Id.* ¶ 8. At that time, William D. Ireland IV and his seventeen-year-old son, Hugh Ireland, were allegedly members of the household of William D. Ireland III at 1 Allen Court,

---

[2] On June 2, 2022, Defendant Integon removed this action (Case No. FST-CV22-6056550-S) from the Superior Court of the State of Connecticut, Judicial District of Stamford/Norwalk, to this Court based on diversity of citizenship, 28 U.S.C. §1332(a)(1). Plaintiffs are citizens of the State of Connecticut; and Integon, a corporation, is a citizen of North Carolina, the state "by which it has been incorporated and . . . where it has its principal place of business," 28 U.S.C. § 1332(c)(1). The amount in controversy well exceeds the statutory minimum "sum or value of $75,000, exclusive of interest and costs," *id.* § 1332(a), in that Plaintiff has incurred medical expenses in excess of $1 million and will continue to incur substantial medical expenses. Doc. 1, ¶ 12. Also, as discussed *supra*, the unsatisfied judgment has been entered in Connecticut Superior Court for $5 million ($4.5 million for Martin and $500K for Ramos) per a Stipulation in *Martin v. Ireland*, Case No. FSTCV21-6052691-S. Doc. 1, ¶ 13.

Norwalk. *Id.* ¶¶ 6-7.  On August 1, 2019, Hugh Ireland was operating a 2016 red Subaru Crosstrek automobile "in a general southerly direction on Toilsome Avenue, near the intersection of Heritage Hill Road," at a "high and dangerous rate of speed, without heed to – or lookout for – pedestrians walking near, alongside or across the roadway, and caused the Subaru vehicle to violently strike [Plaintiff] Martin, throwing her violently into the air and causing her to sustain serious [bodily] injuries." *Id.* ¶¶ 9- 10.

In the Complaint, pursuant to Conn. Gen. Stat. § 38a-321, Plaintiffs bring the first count against Defendant Integon to recover the unpaid judgment rendered in their favor against Hugh Ireland, as the insured of Integon. Doc. 1, ¶ 3; *see also* Doc. 1-1, ¶ 3.  The second count of the Complaint alleges that Hugh Ireland has suffered financial damages as a result of Integon's refusal to provide coverage. Doc. 1-1, ¶¶ 39-41.  As assignees of Hugh Ireland, Plaintiffs seek to recover the damages he has sustained and is entitled to recover from Integon. *Id.* ¶ 42. In particular, in their Complaint, Plaintiffs allege that Integon's refusal to provide insurance coverage to Hugh Ireland for their claims was "undertaken in bad faith and in intentional or reckless disregard of Integon's contractual obligations to Hugh Ireland and his rights to defense and indemnification pursuant to the Integon Policy."[3]  *Id.*  ¶ 39.

Pending before the Court is Plaintiff's "Motion to Compel" non-party Norwalk Police Department to comply with Plaintiffs' Rule 45 subpoena dated April 6, 2023. Doc. 47, at 1. Per this

---

[3] The Court notes that in its "Motion to Strike Plaintiffs' Offers of Compromise" [Doc. 56] Integon asserts that Plaintiffs "explicitly withdrew their bad faith claim against Integon in their June 2, 2023 Memorandum of Law in opposition to Integon's motion for summary judgment." *See* Doc. 56, at 5. Plaintiffs appear to concur regarding the withdrawal, stating in response, "Plaintiffs objected to defendant's Motion for Summary Judgment but withdrew their bad faith claim based on the newly disclosed affidavits defendant attached in support of the Motion for Summary Judgment." Doc. 57, at 3.

3

subpoena, the Norwalk Police Department was directed to produce a copy of its "entire unredacted file" regarding the underlying motor vehicle accident (which occurred on August 1, 2019 at 6:18 p.m.), "case number: 1900036418." Doc. 47-1 ("Subpoena"), at 2. On April 13, 2023, Robert M. Wolfe, State Marshal, Fairfield County, served the subpoena by hand to Mickey Docimo, Keeper of Records, Norwalk Police Department, at 1 Monroe Street, Norwalk, Connecticut. *Id.* at 3. Nonetheless, "despite multiple follow[-]up requests," the Norwalk Police Department has refused to produce copies of "written witness statements of the underlying motor vehicle accident and . . . other portions of the file." Doc. 47, at 1-2. Plaintiffs thus seek an order from this Court to compel the Norwalk Police Department to produce the entire unredacted file, "including the witness statements of Amy Dumas, Marybeth Mason and Steven Snellman, which are referenced in the police report" but have been "withheld without [any] proper basis." *Id.* at 1.

### III.  DISCUSSION

**A.  Rule 45, Fed. R. Civ. P.**

"Pursuant to Federal Rule of Civil Procedure 45, a party may serve a subpoena commanding a nonparty . . . to produce designated documents." *Cruz v. Green Tree Mortg. Servicing, LLC*, No. 3:15CV00714(AWT), 2017 WL 658054, at *1 (D. Conn. Feb. 17, 2017) (quoting *Sberbank of Russia v. Traisman*, No. 3:14-CV-216(WWE), 2016 WL 4479533, at *1 (D. Conn. Aug. 23, 2016)); Fed. R. Civ. P. 45(a)(1)(A)(iii). *See also* Fed. R. Civ. P. 34(c) (captioned "Nonparties") ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.").

Rule 45 further specifies that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a *written*

4

*objection* to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested." Fed. R. Civ. P. 45(d)(2)(B) (emphasis added). Such a written objection to a subpoena for production or inspection "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." *Id.* Failure to serve written objections to a Rule 45 subpoena within the time specified in that Rule "constitutes a waiver of such objections." *Cruz*, 2017 WL 658054, at *1 (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)); *see also* 9 James Wm. Moore, *et al.*, *Moore's Federal Practice* § 45.41[1][c] (3d ed. 2016) ("If no timely written objection is served, the person subject to the subpoena generally waives any objection to production or inspection as commanded by the subpoena.").

"[T]he burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant." *Concord Boat*, 169 F.R.D. at 48 (quoting *United States v. International Bus. Mach Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y.1979)). "On timely motion," a court may quash or modify a subpoena that: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

As to the fourth prong, a court "give[s] special weight to the burden on non-parties of producing documents to parties involved in litigation." *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (collecting cases); *see also Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) ("Within this Circuit, courts have held nonparty status to be a 'significant' factor in determining whether discovery is unduly burdensome.") (citation omitted). *See*

*also Pearson v. Univ. of Chicago*, No. 3:20-MC-00092 (CSH), 2021 WL 194725, at *3 (D. Conn. Jan. 20, 2021) ("Rule 45(d) mandates that the court for the district where compliance with a subpoena is required quash (or modify) a subpoena issued to a non-party where the court finds, *inter alia*, that the subpoena imposes an undue burden on the non-party movant.") (citing Fed. R. Civ. P. 45(d)(3)(iv)).

Whether a subpoena imposes upon a witness an "undue burden" is committed to the sound discretion of the trial court. *Concord Boat*, 169 F.R.D. at 49. That determination depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* (quoting *International Bus. Mach Corp.*, 83 F.R.D. at 104). *See also Jackson v. AFSCME Loc. 196,* 246 F.R.D. 410, 412 (D. Conn. 2007).

Moreover, production sought in a discovery subpoena must fall within the proper "scope of discovery" under Federal Rule of Civil Procedure 26(b)(1). Pursuant to Rule 26(b)(1), the subpoena may request "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).[4] *See, e.g., Citizens Union of City of New York v. Att'y Gen. of New York,* 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) ("The discovery parameters set forth in Rule 26 also apply to subpoenas served upon non-parties.");

---

[4] In addition, " [i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Case 3:22-cv-00736-CSH   Document 60   Filed 02/22/24   Page 7 of 10

*Berkelhammer v. Voya Institutional Plan Servs., LLC*, No. CV 3:22-MC-00099-MEG, 2023 WL 5042526, at *2 (D. Conn. Aug. 8, 2023) ("A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement, which provides that information is generally discoverable if it is relevant to any party's claim or defense, proportional to the needs of the case, and not privileged.") (citing Fed. R. Civ. P. 26(b)(1)).

"If a party fails to obey a subpoena or an order to provide discovery, the Court may hold that party in contempt." *E. Point Sys., Inc. v. Maxim*, No. 3:13-CV-00215(VAB), 2016 WL 1118237, at *25 (D. Conn. Mar. 22, 2016); *see also* Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required ... may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."). It is also "well-settled that a court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it." *Trustees of I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.*, No. 3:11-CV-709 (CSH), 2016 WL 1060188, at *3 (D. Conn. Mar. 14, 2016) (citation and internal quotation marks omitted) (collecting cases).

"Although Rule 45(g) permits a court to hold a person in contempt for failure to obey a subpoena 'without adequate excuse,' 'courts in the Second Circuit have often held that ... a court should first issue an order compelling compliance with the subpoena.' " *New Falls Corp. v. Soni*, No. CV166805ADSAKT, 2017 WL 9732100, at *1 (E.D.N.Y. Oct. 30, 2017) (quoting *Kerr v. Thomas*, No. 14 CIV 9168, 2017 WL 485041, at *4 (S.D.N.Y. Feb. 3, 2017) and collecting cases). The reasoning behind first compelling compliance is that "an order of contempt leading to the imposition[ ] of sanctions is a drastic remedy." *New Falls*, 2017 WL 9732100, at *1 (quoting *Kerr*, 2017 WL 485041, at *4) (internal quotation marks and brackets omitted); *see also In re Dunne*, No.

7

3:17-CV-1399 (MPS), 2018 WL 4654698, at *6 (D. Conn. Sept. 27, 2018) ("Although the Rule's plain text authorizes a court to hold a party in contempt simply for failing to comply with a subpoena, 'courts in the Second Circuit have often held that . . . a court should first issue an order compelling compliance with the subpoena.'") (quoting *New Falls*, 2017 WL 9732100, at *1).

### B.  Subpoena on Norwalk Police Department

In the case at bar, the Norwalk Police Department has failed to comply with the Plaintiffs' subpoena by failing "to produce the entire unredacted file" at issue  and/or "refusing to produce the witness statements of Amy Dumas, Marybeth Mason and Steven Snellman, despite multiple follow up requests for the same." Doc. 47, at 1- 2.  Furthermore, the Norwalk Police Department has "offered no excuse" for failing to obey the subpoena, *id.* at 2, and has served no written objections to the subpoena.  The fourteen-day period to object has long since expired so that objections by the Norwalk Police Department have been effectively waived.[5]

Upon examination of the subpoena, the Court finds that it is facially valid and addresses documents relevant to the motor vehicle incident on August 1, 2019, and thus the Underlying Action in this case.  Eyewitness statements regarding the events of that incident are probative of the facts that occurred on that date and at that time.  It was Hugh Ireland's alleged negligence during that incident which caused the injuries for which  Plaintiffs now seek indemnification from Integon.[6]

---

[5]  The Court further notes that neither Integon nor the Norwalk Police Department has filed any motion to quash the subpoena on the case docket.

[6] In Connecticut, the well-established "four corners" doctrine dictates that "the duty to defend is broader than the duty to indemnify." *Travelers Cas. & Sur. Co. of Am. v. Netherlands Ins. Co.*, 312 Conn. 714, 739 (2014). "An insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage." *Id.*  In contrast to the duty to defend, the duty to indemnify is narrower: . . .the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." *Id.*

Therefore, viewed broadly for the purposes of discovery, the subpoena fulfills the "overriding relevance requirement" that applies to a subpoena served on a non-party pursuant to Rule 45. *See, e.g., Cruz*, 2017 WL 658054 at *2 (quoting *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010)). *See also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (holding that Fed. R. Civ. P. 26(b)(1) is a "broad rule that is liberally construed" in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case") (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

---

In general, if indemnity is sought on the basis of settlement of the underlying action, the settlement amount may only be "presumptive evidence of liability and the limits thereof, and issues of liability and limits may remain factual questions*." See generally* 15A Couch on Ins. § 217:18 n.1 ("Effect of settlement on indemnification"). The Second Circuit has held that "[w]hen an insurer declines coverage, as here, an insured may settle rather than proceed to trial to determine its legal liability." *Bunge Corp. v. London and Overseas Insurance Co.*, 394 F.2d 496, 497, (2d Cir. 1968), *cert. denied*, 393 U.S. 952 (1968). "In order to recover the amount of the settlement from the insurer, the insured need not establish actual liability to the party with whom it has settled 'so long as . . . a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success against the [insured].'" *Luria Bros. & Co. v. All. Assur. Co.*, 780 F.2d 1082, 1091 (2d Cir. 1986) (quoting *Damanti v. A/S Inger*, 314 F.2d 395, 397 (2d Cir. 1963), *cert. denied*, 375 U.S. 834 (1963)). *See also Black v. Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 153 (1996) ("An insurer who chooses not to provide its insured with a defense and who is subsequently found to have breached its duty to do so must bear the consequences of its decision, including the payment of *any reasonable settlement* agreed to by the plaintiff and the insured.") (emphasis added and citation omitted). In the case at bar, the Underlying Action ended in settlement rather than trial. The facts of the underlying case remain relevant with respect to possible indemnification.

9

Also, Plaintiffs have properly limited the scope of their request to: "[a] copy of the Norwalk Police Department's entire unredacted file regarding case number 1900036418 (motor vehicle accident that occurred on 08.01.2019 around 18[:]55)." Doc. 47-1, at 2. Such a request states with particularity the file sought, including the date and time of the incident documented. Accordingly, the subpoena does not appear overly broad on its face. Absent any objection to the subpoena, the Court has no reason to believe that compliance would be unduly burdensome. Under these circumstances, the Court will grant Plaintiffs' "Motion to Compel" [Doc. 47].

## IV. CONCLUSION AND ORDER

The Court hereby GRANTS Plaintiffs' "Motion to Compel" [Doc. 47]. Plaintiffs shall serve a copy of this Order by certified mail to non-party Norwalk Police Department on or before **March 8, 2024.** The Norwalk Police Department is hereby ORDERED to respond to the subject subpoena on or before **April 5, 2024.** Should that non-party fail to comply with this Court's Order, it may be subject to sanctions for contempt. Fed. R. Civ. P. 45(g).

It is SO ORDERED.

Dated:  New Haven, Connecticut
          February 22, 2024

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge