**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NATALIA MARTIN AND EDGARDO RAMOS, *Plaintiffs,* | ) | 3:22-CV-0736 (SVN) |
| v. | ) | |
| INTEGON NATIONAL INSURANCE COMPANY, *Defendant.* | ) | July 15, 2025 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

In this insurance liability dispute, Plaintiffs Natalia Martin and Edgardo Ramos seek payment from Defendant Integon National Insurance Company ("Integon") for the unsatisfied portion of a five million dollar stipulated judgment in an underlying personal injury lawsuit. The stipulated judgment resolved a car accident case stemming from seventeen-year-old Hugh Ireland's collision with Plaintiff Martin, a pedestrian, while he was driving his mother's car in August of 2019. In the ensuing state court lawsuit, Plaintiffs and Ireland ultimately stipulated to a judgment of $4.5 million in favor of Plaintiff Martin and $500,000 in favor of Plaintiff Ramos, Martin's husband, for loss of companionship.

In the present case, Plaintiffs primarily contend that Integon is directly liable to them for the amount awarded in the stipulated judgment, pursuant to Conn. Gen. Stat. § 38a-321, because Hugh Ireland was covered under his grandparents' insurance policy with Integon, as a resident of their household. *See* Compl., ECF No. 1-1 at 4–12 (Count One). Plaintiffs also alleged that Integon acted in bad faith in refusing to provide insurance coverage to Hugh Ireland under the policy. *Id.* at 12–13 (Count Two).

Integon has moved for summary judgment on both counts of Plaintiffs' complaint. ECF No. 34.[1] As part of their opposition brief to Integon's motion, Plaintiffs withdrew Count Two. Then, following oral argument—during which the proper disposition of Count Two was discussed—Plaintiffs moved to dismiss Count Two pursuant to Fed. R. Civ. P. 41(a)(2). ECF No. 90. For the reasons set forth below, the Court DENIES Integon's motion for summary judgment as to Plaintiffs' direct action claim (Count One) but GRANTS it as to Plaintiffs' bad faith claim (Count Two). Plaintiffs' motion to dismiss Count Two is denied as moot.

## I. FACTUAL BACKGROUND[2]

### A. <u>The Underlying Action</u>

As noted above, on August 1, 2019, seventeen-year-old Hugh Ireland hit Plaintiff Martin, a pedestrian, while driving his mother's car. Pls.' L. R. 56(a)(2) St., ECF No. 42, ¶¶ 2–3. Martin sustained serious injuries from the accident, and she and Ramos sued Hugh Ireland in Connecticut Superior Court. *Martin v. Ireland*, No. FST-CV21-6052691-S ("Underlying Action"). In that action, the parties agreed to a stipulated judgment awarding $4,500,000 to Plaintiff Martin and $500,000 to Plaintiff Ramos. Pls.' L. R. 56(a)(2) St. ¶ 4.

As part of the settlement agreement between the parties in the Underlying Action, Hugh Ireland and his parents—William Ireland IV and Maureen Ireland—all signed affidavits of no excess coverage (the "Agreement Affidavits"). *Id.* ¶ 22. In his own affidavit of no excess coverage, Hugh Ireland listed two residences: 39 Allen Rd. Norwalk, Connecticut 06851 (his mother's address) and 2 Allen Court, Norwalk, Connecticut 06851 (his paternal grandparents'

[1] Integon also filed a motion to strike an offer of compromise made by Plaintiffs. ECF No. 56. This motion was fully briefed, and the parties were put on notice that the Court would consider it as part of the June 18, 2025, oral argument. At outset of oral argument, however, Integon withdrew this motion. *See* Oral Arg. Tr., ECF No. 92, at 15–16.

[2] The factual background is taken primarily from Plaintiffs' Local Rule 56(a)(2) Statement, ECF No. 42 ("Pls.' L.R. 56(a)(2) St."). The facts are undisputed, unless otherwise indicated.

address).[3] *Id.* ¶ 31. Hugh Ireland noted that, at the time of the accident, his father and mother shared custody of him, and that his father lived at 2 Allen Court with his (Hugh's) grandparents. *Id.* ¶ 29. William Ireland IV also stated on his affidavit that Hugh Ireland was a "member of the household" at 2 Allen Court, Norwalk, Connecticut 06815. *Id.* ¶ 25.

B. The Integon Policy

Integon issued an insurance policy to Hugh Ireland's paternal grandparents, William D. Ireland III and Jane Ireland, for the period spanning September 21, 2018, to September 21, 2019. *Id.* ¶ 8. This insurance policy provided auto liability coverage with bodily injury limits of $250,000 per person and $500,000 per accident. *Id.* ¶ 9. Under the policy, the covered parties included the named insured policyholders, William D. Ireland III and Jane Ireland of 2 Allen Court, Norwalk, Connecticut 06851, and their "family members," as well as any person using the insureds' "covered auto." *Id.* ¶¶ 8, 35. Within the policy, "family members" are defined as "a person related to [the policyholder] by blood, marriage, or adoption who is a resident of [the policyholder's] household." *Id.* ¶ 36(F).

As part of the stipulated judgment agreement in the Underlying Action, Hugh Ireland assigned to Plaintiffs all of his rights to payment from Integon related to Plaintiffs' claims. *Id.* ¶ 6.

C. Denial of Coverage Under Integon Policy

Plaintiffs requested coverage from Integon under the elder Irelands' policy. *See* Compl., ECF No. 1-1 ¶¶ 29–31. On February 12, 2021, Integon denied coverage for bodily harm caused by the car accident in the Underlying Action despite Hugh Ireland's assignment of his rights of

[3] The parties do not dispute that Hugh Ireland's paternal grandparents' house address was 1 Allen Court Norwalk, Connecticut until approximately 2018, when the City of Norwalk changed the address to 2 Allen Court. *See* Pls.' L.R. 56(a)(2) St. ¶ 41. Both addresses refer to the same property. The Court will refer to the address as 2 Allen Court in this ruling.

payment from Integon to Plaintiffs. Pls.' L. R. 56(a)(2) St. ¶ 133. Integon reasoned that, based on its investigation, "Hugh Ireland was not a resident of William and Jane Ireland's household on the date of loss and, therefore, he was not a 'family member' within the meaning of that term as defined in the Integon Policy"; nor was Hugh Ireland driving a covered vehicle at the time of the accident. *Id.* ¶¶ 133–34.

The parties agree that Hugh Ireland was not driving a covered vehicle at the time of the accident, but they do dispute whether Hugh Ireland was a resident of his grandparents' household at that time. Plaintiffs contend that, based on the affidavits Hugh Ireland and William Ireland III signed in the Underlying Action, there is a dispute of fact over this central coverage issue. *Id.* ¶¶ 25, 31. Integon, for its part, believes that evidence from its own investigation and later affidavits provided by Jane Ireland, William Ireland III, Maureen Ireland, William Ireland IV, and Hugh Ireland (hereafter, the "Integon Affidavits") support its determination that Hugh Ireland did not reside at his grandparent's home on August 1, 2019, or ever. *Id.* ¶¶ 38, 43–44, 60–62, 76–77, 80, 95, 99, 110–11, 114–15, 124, 130–31. The Integon Affidavits generally affirm that Hugh Ireland visited his grandparents' house, but did not have a room there, did not spend the night there, did not keep clothes or belongings there, and did not receive mail there. *Id.* ¶¶ 46–48, 62–64, 80–82, 99–101, 114–17. In his Integon Affidavit, Hugh Ireland also affirmed that he erroneously listed his grandparents' house as one of his residences on the Settlement Affidavit and that his subsequent statements indicating that he did not ever reside there were accurate. *Id.* ¶¶ 121–22. Integon thus contends that there is no genuine dispute of fact about whether Hugh Ireland is covered under his grandparents' policy, and that it is thus entitled to summary judgment on Plaintiffs' claims.

## II. PROCEDURAL BACKGROUND

In June of 2023, while this action was assigned to U.S. District Judge Charles Haight, Integon filed the present motion for summary judgment on both claims asserted by Plaintiffs. ECF No. 34. In their opposition, Plaintiffs explicitly withdrew Count Two of their complaint, the bad faith claim. *See* ECF No. 41 at 4–5. This withdrawal prompted Integon to file a motion to strike Plaintiffs' offer of compromise made pursuant to Conn. Gen. Stat. § 52-192a, which Plaintiffs opposed. *See* Mot. to Strike, ECF No. 56; Opp. to Mot. to Strike, ECF No. 57. In May of 2025, the case was reassigned to the undersigned. *See* Order of Transfer, ECF No. 64.

The Court held oral argument on the motion for summary judgment and the motion to strike on June 18, 2025. During the argument, Integon withdrew its pending motion to strike Plaintiffs' offer of compromise. ECF No. 92 at 15–16. Additionally, the parties tentatively agreed to file a joint notice of voluntary dismissal, with prejudice, of Count Two, in light of Plaintiffs' withdrawal of that count. *Id.* at 25; Order, ECF No. 89. Despite their commitment at oral argument, the parties were unable to agree on whether costs should be awarded in any stipulation of dismissal, prompting a new round of briefing on Plaintiffs' motion to dismiss Count Two. *See* Mot. to Dismiss, ECF No. 90; Def.'s Opp. to Mot. to Dismiss, ECF No. 93; Pls.' Reply, ECF No. 95.

## III. SUMMARY JUDGMENT LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the

import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## IV. COUNT ONE: DIRECT ACTION CLAIM, CONN. GEN. STAT. § 38a-321

To begin, the Court denies Integon's motion for summary judgment as to Plaintiffs' direct action claim because the Court finds a genuine dispute of material fact exists as to whether Hugh Ireland was a resident of his grandparents' home at the time of the accident.

Direct action claims asserted under Conn. Gen. Stat. § 38a-321 consist of three elements: "'(1) that the plaintiff has recovered a final judgment; (2) that the judgment is against a person who was insured by the defendant against liability on it; and (3) that the judgment remains unsatisfied.'" *Tucker v. Am. Int'l Grp. Inc.*, 936 F. Supp. 2d 1, 8–9 (D. Conn. 2013) (quoting *Skut v. Hartford Accident & Indem. Co.*, 142 Conn. 388, 393 (Conn. 1955)). The parties do not dispute that the first element is satisfied, as Plaintiffs have recovered a final judgment in the underlying action in the form of a stipulated judgment awarding Plaintiff Martin $4,500,000 in damages, awarding Plaintiff Ramos $500,000 in damages, and assigning them Hugh Ireland's rights of payment from Integon, should any exist. Pls.' L. R. 56(a)(2) St. ¶¶ 4, 6. Nor do the parties dispute that the judgment remains unsatisfied. Thus, it is the second element—whether Hugh Ireland was insured by Integon when the accident occurred—that is central to Integon's motion for summary judgment.

As described above, the insurance policy at issue here provides coverage to the named insured policyholders, William D. Ireland III and Jane Ireland, and their "family members"—defined as "a person related to [the policyholder] by blood, marriage, or adoption *who is a resident*

*of [the policyholder's] household*." *Id.* ¶ 36(F) (emphasis added).[4] The insurance policy is interpreted under the rules "that govern the construction of any written contract." *Conn. Med. Ins. Co. v. Kulikowski*, 286 Conn. 1, 5 (Conn. 2008). As relevant here, because the parties agree that the terms of the policy are clear and unambiguous, the language of the policy must be accorded its "natural and ordinary meaning." *Id.*

Whether an individual is a resident of household for purposes of an insurance policy governed by Connecticut law involves analysis of several factors. *See GEICO Indemnity Co. v. Dionisio*, No. 3:12-CV-1137 (VLB), 2016 WL 74390, at *7 (D. Conn. Jan. 6, 2016) (citing *Remington v. Aetna Cas. & Sur. Co.*, 240 Conn. 309, 315 (Conn. 1997)). The factors considered are:

> the intent of the individual; the frequency of contact between the individual and other household inhabitants; the frequency with which the individual spends time at the household; the maintenance of a separate residence for the individual; whether the individual is emotionally and financially capable of establishing and maintaining a residence independent of the household; the location of personal belongings; the location of and address used for personnel and business records; the address at which mail is received; and the address used for formal purposes such as voting, licenses, and income tax filings.

*Remington*, 240 Conn. at 315; *see also Israel v. State Farm Mut. Auto. Ins. Co.*, 239 F.3d 127, 131–32 (2d Cir. 2000) (considering the *Remington* factors to assess residency for insurance liability purposes). These factors are not exhaustive and any determination regarding residence depends on the specific factual circumstances of a case. *Griffith v. Sec. Ins. Co.*, 167 Conn. 450, 458–59 (Conn. 1975). Further, an individual may be a resident at more than one address. *See*

[4] The parties agree that Hugh Ireland is related by blood to William D. Ireland III and Jane Ireland. *See* ECF No. 34 at 15; ECF No. 41 at 9. Therefore, the only dispute here is whether Hugh was a resident of their household on the date of the accident.

*Remington*, 240 Conn. at 316 (holding that a jury charge was too narrow where it failed to instruct that "a person may have more than one residence").

As detailed below, the parties have provided conflicting evidence regarding Hugh Ireland's residence(s) on August 1, 2019. Thus, because a reasonable jury could find that Hugh Ireland was a resident of his paternal grandparents' home on August 1, 2019, Integon's motion for summary judgment must be denied.

First, the Agreement Affidavits conflict with the Integon Affidavits on this issue, creating a genuine dispute of material fact. In the Agreement Affidavits, Hugh Ireland listed his grandparents' residence as one of his addresses. Pls.' L.R. 56(a)(2) St. ¶ 31. Additionally, William Ireland IV's affidavit stated that Hugh Ireland was a "member of the household" at Hugh's grandparents' address. *Id.* ¶ 25. In the Integon Affidavits, on the other hand, Hugh Ireland and William Ireland IV stated that Hugh was in fact not a resident of his grandparents' home on the date of the accident, and that the former statement of residency in the Settlement Affidavits was made in error.[5] *See* Pls.' L.R. 56(a)(2) St. ¶¶ 95, 110, 114, 121–22. This conflict evinces a genuine dispute of material fact.

Second, the deposition testimony taken in this case further supports the conclusion that there is a genuine dispute of material fact as to whether Hugh Ireland was a resident of his grandparents' home on August 1, 2019. In his deposition, Hugh Ireland stated that the two residences listed on the Settlement Affidavit were listed in error and that he never resided at 2 Allen Court. *See* Hugh Ireland Dep. Tr., ECF No. 50-3 at 20. Integon argues that Hugh's recantation of his prior statement requires the Court to find there is no genuine dispute of material

---

[5] For the first time in its reply brief, Integon suggests that the Settlement Affidavits are impermissible hearsay. *See* ECF No. 48 at 14. But "[a]rguments may not be made for the first time in a reply brief." *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) (collecting cases). The Court, therefore, will not entertain a belated, obliquely-raised hearsay argument.

fact. *See* ECF No. 34 at 11–12. But where the same witness makes conflicting statements at different points in time, he creates a credibility dispute that must be left to a jury to resolve. *See Miranda v. Westover Sch., Inc.*, No. 22-2546-cv, 2023 WL 6307044, at *2 (2d Cir. Sept. 28, 2023) (summary order) (reversing district court's grant of summary judgment where a single witness made potentially conflicting statements in a deposition); *see also Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 247–48 (2d Cir. 2020) (reversing district court's grant of summary judgment where a witness's declaration, submitted for summary judgment, contradicted the witness's statements earlier in the case).

This is not the "rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 555 (2d Cir. 2005). Rather, the issue is one of a witness's credibility, which makes it unsuitable for resolution on summary judgment. *See Frost*, 980 F.3d at 245 (noting that "[i]t is a bedrock rule of civil procedure that a 'district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented.'" (quoting *Agosto v. INS*, 436 U.S. 748, 756 (1978)). The jury must decide whether it believes Hugh Ireland's statement in the Settlement Affidavit that his grandparents' residence was one of his addresses, or his later statements that he did not reside at their home. That other deponents also testified that Hugh Ireland never lived at 2 Allen Court does not alter this conclusion; indeed, it only highlights the genuine factual dispute.

Additionally, other evidence in the record presents conflicting facts regarding Hugh Ireland's residency, as evaluated through the *Remington* factors. On the one hand, Hugh Ireland, his mother, and his grandparents all testified that he never resided at 2 Allen Court, that he would go there for visits such as on Wednesday nights for a few hours and sometimes to use the pool, and that he could come and go as he pleased but did not have a key. *See* J. Ireland Dep. Tr., ECF

No. 50-2, at 10:24–25, 11:1–3, 13:4–21, 19:19–22; H. Ireland Dep. Tr., ECF No. 50-3 at 9:23–25, 10:1–5, 11:5–13,13:4–12, 20:15–22, 22:15–17; W. Ireland III Dep. Tr., ECF No. 50-4 at 9:14–22, 10:17–19, 11:9–11; M. Ireland Dep. Tr., ECF No. 50-5 at 36:11–25, 37:16–21. Hugh Ireland and his mother also testified that he never spent the night at 2 Allen Court. *See* ECF No. 50-3 at 21:23–22:7; ECF No. 50-5 at 10:1–3. But Hugh Ireland's father told a Progressive Insurance representative that Hugh Ireland slept at his grandparents' house five to ten percent of the time and described Hugh's frequency of visits to his grandparents' house as "constant," noting that it was "like an open house with my kids." Pls.' Ex. 1, ECF No. 43-1 at 3. Hugh Ireland's mother later disputed those statements. *See* ECF No. 50-5 at 35:22–25, 36: 1–10. Additionally, Hugh Ireland and his mother testified that he never left any belongings at his grandparents' house, ECF No. 50-3 at 15:8–10; ECF No. 50-5 at 37:16–18, but Hugh Ireland's grandmother testified that he sometimes left a bathing suit or towel there, ECF No. 50-2 at 19:17–22. Finally, Hugh Ireland, his mother, and his father affirmed both in the Settlement Affidavits and in subsequent deposition testimony that, at the time of the accident, his parents shared custody of Hugh Ireland, and his father resided at 2 Allen Court. *See* Pls.' L. R. 56(a)(2) St. ¶¶ 23, 25–26, 29, 43, 79; ECF No. 50-3 at 16:7–9; ECF No. 50-5 at 17:8–11. Such conflicting material facts preclude summary judgment.

The Court is not convinced by Integon's counterarguments. Integon essentially seeks to have the Court determine that its evidence supporting its position that Hugh Ireland did not reside with his grandparents on the date of the accident is weightier than Plaintiff's evidence to the contrary. In so arguing, Integon attempts to sow doubt as to the truth of the statements in the Agreement Affidavits, based on alleged motivations of Hugh Ireland and his father to avoid liability for the significant judgment owed to the plaintiffs in the Underlying Action. But, again,

"credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not the court on a motion for summary judgment." *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d. Cir. 2003) (internal citations and quotation marks omitted). Assessing whether Hugh Ireland was a resident of his grandparents' home on August 1, 2019—the material fact on which liability turns—inherently requires the exact type of factual determination that must be left to a jury, in light of the conflicting affidavits and other evidence presented by both parties. *See Associated Metals & Minerals Corp. v. M/V Arktis Sky*, 978 F.2d 47, 52 (2d Cir. 1992) (overruling district court's grant of summary judgment because "the documentary proof and conflicting affidavits submitted in this case create a genuine dispute of material fact" such that "defendants are not entitled at this stage of the proceeding to judgment as a matter of law").

At oral argument, Integon asserted, for the first time, that this Court could disregard the conflicting affidavits and evidence and weigh the *Remington* factors itself pursuant to *Dionisio*, 2016 WL 74390, and *Bonilla v. Amica Mutual Ins.*, No. 106010810-S, 2011 WL 4347788, at *3–4 (Conn. Super. Ct. Aug. 29, 2011), and that any such analysis would require the Court to grant summary judgment for Integon. *See* ECF No. 92 at 7–15. The Court need not consider this argument, which was raised for the first time at oral argument. *See Dollar Phone Corp. v. Dun & Bradstreet Corp.*, 559 F. App'x 71, 72 (2d Cir. 2014) (affirming district court decision declining to address arguments raised for the first time at oral argument). Although Integon cited *Dionisio* in its reply, it did so only to briefly distinguish its facts from those of this case and to allude to a possible hearsay argument. *See* ECF No. 48 at 7, 14; *see also supra* n.5. And Integon never briefed any argument related to *Bonilla*. Rather, Integon notified the Court of the existence of *Bonilla*—a case decided in 2011, approximately thirteen years before Integon filed its motion for

summary judgment in this case—as part of a notice of supplemental authority filed shortly before the oral argument on its motion. *See* Notice, ECF No. 80; Notice, ECF No. 82. Even then, the notice of supplemental authority did not include any analysis related to the holding in *Bonilla*; instead, it included a copy of the case with excerpts highlighted. *See* ECF Nos. 80, 82. Thus, the Court declines to consider Integon's belated argument as to these cases. [6]

For these reasons, Integon's motion for summary judgment is denied as to Plaintiffs' direct liability claim.

## V. COUNT TWO: BAD FAITH CLAIM

Integon's motion for summary judgment is granted as to Plaintiffs' bad faith claim and Plaintiffs' motion for an order dismissing the bad faith claim is denied as moot.

As noted above, Plaintiffs explicitly withdrew Count Two in their opposition to Integon's motion for summary judgment. *See* ECF No. 41 at 4–5. And although the parties had tentatively agreed at the oral argument to stipulate to dismissal of that claim with prejudice, they failed to reach agreement as to whether Integon should be awarded costs. *See* ECF No. 90. Thus, Plaintiff has moved for an order of dismissal under Federal Rule of Civil Procedure 41(a)(2). *Id.*

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff may dismiss an action without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment," or a stipulation signed by all parties who have appeared. As Integon has filed a summary judgment motion and refuses to stipulate to dismiss Count Two on Plaintiffs' terms, Plaintiffs cannot avail themselves of Rule 41(a)(1)(A)'s

---

[6] In any event, both *Dionisio* and *Bonilla* are distinguishable from this case, as the records in those cases supported their conclusions that, under the *Remington* factors, there was no genuine dispute about the relevant party's residency. Here, Integon did not even bother to brief the *Remington* factors in its opening papers. And, for the reasons described above, there is a genuine dispute about whether Hugh Ireland was a resident of his grandparents' household on the date of the accident.

procedure. Instead, Plaintiffs seek dismissal under Rule 41(a)(2), which allows dismissal by court order, "on terms that the court considers proper." For the reasons discussed below, the Court believes it is appropriate to grant Integon's motion for summary judgment as to Count Two, and thus is denies Plaintiffs' motion to dismiss that count as moot.

Courts in this circuit appear to vary in their approach to a plaintiff's withdrawal of a claim as part of summary judgment briefing. *Compare, e.g.*, *Yorzinski v. City of New York*, 175 F. Supp. 3d 69, 74 n.3 (S.D.N.Y. 2016) (granting summary judgment as to withdrawn claims) *with Malarczyk v. Lovgren*, No. 1:19-CV-42, 2022 WL 374271, at *13 n.10 (N.D.N.Y. Feb. 8, 2022) (dismissing a claim explicitly withdrawn in opposition to motion for summary judgment rather than granting summary judgment). Nonetheless, where a defendant would be prejudiced by a plaintiff's withdrawal of a claim at the summary judgment stage, permitting such a withdrawal would neither be fair nor in the interests of justice. *See Frerck v. John Wiley & Sons, Inc.*, No. 11-CV-2727, 2014 WL 3512991, at *9, n.10 (N.D. Ill. July 14, 2014) ("Allowing Plaintiff to withdraw his claims now—at the end of discovery and while Defendant's motion for summary judgment is pending—runs counter to the purpose of summary judgment and would unfairly prejudice Defendant. The Court rejects Plaintiff's attempt to 'deprive the defendant of a ruling on the summary judgment motion by [his] dismissal tactic.'" (citation omitted) (alteration in original) (quoting *Pace v. S. Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969)).

Here, Plaintiffs withdrew their bad faith claim in their opposition to Integon's motion for summary judgment, in light of the statements in the Integon Affidavits. ECF No. 41 at 4–5. Under these circumstances, the Court finds that granting Integon summary judgment on Count Two is appropriate, as permitting Plaintiffs to withdraw or dismiss this claim at this stage would unfairly prejudice Integon, which expended effort to litigate and brief a summary judgment motion on

Count Two, and would permit Plaintiffs to avoid judgment on the merits via a late-breaking dismissal tactic. Moreover, if successful on its motion for summary judgment, Integon would typically be entitled to costs—other than attorney's fees—as a prevailing party. *See* Fed. R. Civ. P. 54(d)(1). By seeking dismissal under Rule 41 at this late stage, Plaintiffs appear to be seeking to avoid the possibility of paying Integon's costs as to Count Two. Indeed, it was the parties' dispute as to whether Integon would be entitled to costs that prompted Plaintiffs' motion to dismiss. Whether Integon will be awarded costs will be left for another day; but it is a prevailing party on Count Two given Plaintiffs' withdrawal of that count, and it should be allowed to seek costs at the appropriate time.

Thus, the Court grants Integon's motion for summary judgment as to Count Two. It further denies as moot Plaintiff's motion to dismiss, in light of its determination that summary judgment as to Count Two is appropriate. The Court declines to reach the question of whether an award of costs in Integon's favor is appropriate at this time, and will leave that issue to be resolved at the conclusion of this litigation.

## VI. CONCLUSION

For the reasons described herein, Integon's motion for summary judgment is DENIED as to Plaintiffs' direct action claim (Count One), and GRANTED as to Plaintiffs' bad faith claim (Count Two). Plaintiffs' motion for an order dismissing Count Two is DENIED AS MOOT.

The Court will convene a status conference to set dates for pretrial submissions and trial.

**SO ORDERED** at Hartford, Connecticut, this 15th day of July 2025.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE